UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. CV 25-7992 HDV (PVCx) Date: November 23, 2026

Title Humberto Duran v. Los Angeles County Sheriff's Department, et al.

Present: The Honorable Pedro V. Castillo, United States Magistrate Judge

| Marlene Ramirez | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**PROCEEDINGS: [IN CHAMBERS] DECISION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL IN PART (DKT. NOS. 59, 60, 61, 77)**

## I. INTRODUCTION

This case arises from the wrongful conviction of Plaintiff for the murder of Alberto Gonzales and the attempted murder of Monica Rivera, for which he was declared factually innocent and released after serving 30 years in prison. Plaintiff Humberto Duran alleges that his wrongful conviction, later overturned, was due to the members of the Los Angeles County Sheriff's Department (LASD) gang, "The Banditos," suppressing and fabricating evidence against him. ("Complaint," Dkt. No. 1). Now, in discovery, he seeks documents and communications pertaining to this alleged LASD gang and its alleged suppression and fabrication of evidence. (Dkt. Nos. 59, 60, 61, 77). As explained below, the Court GRANTS production of some documents and communications but DENIES production of documents and communications not within the scope of this Motion to Compel.

## II. BACKGROUND

Plaintiff was wrongfully convicted of murder and attempted murder, which occurred on December 18, 1993. ("Complaint," Dkt. No. 1 at ¶ 11). On January 11, 1994, Plaintiff was charged with these crimes, and several months later, Plaintiff was sentenced to two consecutive life sentences with the possibility of parole after guilty verdicts. (*Id.* at ¶¶ 116, 145). Since Plaintiff's convictions, the main witness recanted her false statements and identification of the Plaintiff as the shooter. (*Id.* at ¶ 148). On January 9, 2024, Plaintiff filed a petition for a writ of habeas corpus in the Los Angeles Superior Court ("LASC") asserting new evidence of actual innocence. (*Id.* at ¶ 150). On October 18, 2024, the LASC granted Plaintiff's petition and vacated his convictions. (*Id.* at ¶ 152). Thereafter, the LASC granted a motion for the finding of actual innocence. (*Id.* at ¶ 156).

In his Complaint, Plaintiff raises several claims. Plaintiff alleges that Defendant Los Angeles County Sherrif's Department and Defendant Los Angeles County have a policy and custom where gangs of LASD deputies engaged in misconduct, which the Defendants tolerated and ratified. (*Id.* at ¶¶ 164–72). Specifically, he alleges that Defendant Batenero was one of the founding members of the LASD deputy gang called "The Banditos." (*Id.* at ¶ 181). This gang allegedly fabricated inculpatory evidence against defendants and suppressed exculpatory evidence from prosecutors and criminal defendants, including Plaintiff. (*Id.* at ¶ 182).

Currently in discovery, the parties have reached an impasse on several requests for production. Following several informal discovery conferences (Dkt. Nos. 48, 51), the Court ordered the parties to brief the disputes on a set schedule. (*Id.*). The parties filed a Rule 37-2 Joint Stipulation for Plaintiff's Motion to Compel discovery responses and for Attorneys' Fees from Defendant Los Angeles County Sheriff's Department and Defendant County of Los Angeles on September 15, 2026. ("Motion," Dkt. Nos. 59, 60). Plaintiff filed a Memorandum in Support of Motion to Compel Production of Documents

and Communications. (Dkt. No. 61). After the October 6, 2026, hearing, Plaintiff filed a supplement to the motion[1], which the Court granted leave for. (Dkt. No. 65–66). Plaintiff has identified the following requests for production as those in dispute:

*Request for Production No. 19*

All documents and communications pertaining to the LASD deputy gangs.

*Request for Production No. 20*

All documents and communications pertaining to the LASD deputy gang called "The Banditos."

[1] Plaintiff's Supplemental Exhibit in Support of Motion to Compel and for Attorneys' Fees ("Plaintiff's Supplement") includes a "List of Los Angeles County and Los Angeles County Sheriff's Department Documents on Deputy Gangs." (Dkt. No. 65). This list calls for 26 different items—these items were not specifically requested in Plaintiff's Request for Production to Defendants. (*Id.* at 2–3). Although these documents may be responsive and relevant, the list does not identify ***any*** specific discovery requests for production. (*Id.*). A Rule 37 motion to compel may not be used to enforce an "informal" request for documents or information. *MAO-MSO Recovery, LLC v. Mercury Gen.*, No. 17CV02525ABAFMX, 2019 WL 1423772, at *3 (C.D. Cal. Feb. 19, 2019); see also *Heilman v. Silva*, 2015 WL 1632693, *11 (S.D. Cal. April 13, 2015); *Roberts v. Americable Int'l Inc.*, 883 F. Supp. 499, 501 n. 2 (E.D. Cal. 1995); *James v. Wash Depot Holdings, Inc.*, 240 F.R.D. 693, 694-95 (S.D. Fl. 2006); O'Connell & Stevenson, Rutter Group Prac. Guide: Federal Civ. Pro. Before Trial (2018), ¶11:2351.1. The Court therefore addresses only the discovery requests properly at issue in the Motion to Compel. To the extent the documents and communications identified in Plaintiff's Supplement are responsive to those requests and subject to production under this Order, Defendants shall produce them.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. CV 25-7992 HDV (PVCx) Date: November 23, 2026

Title Humberto Duran v. Los Angeles County Sheriff's Department, et al.

*Request for Production No. 21*

All documents and communications pertaining to the July 1992 Report issued by Special Counsel James G. Kolts.

*Request for Production No. 22*

All documents and communications pertaining to the study of LASD deputy gangs and tattoos conducted by former LASD Sheriff Jim McDonnell.

*Request for Production No. 23*

All documents and communications pertaining to the 2021 Loyola Marymount University, Loyola Law School, Center for Juvenile Law and Policy Report titled "50 Years of Deputy Gangs in the Los Angeles County Sheriff's Department."

*Request for Production No. 24*

All documents and communications from 1988 to the present pertaining to investigations of LASD deputies for fabricating evidence.

*Request for Production No. 25*

All documents and communications from 1988 to the present pertaining to citizen complaints against LASD deputies for fabricating evidence.

*Request for Production No. 26*

All documents and communications form 1988 to the present pertaining to lawsuits against LASD deputies for fabricating evidence.

*Request for Production No. 27*

All documents and communications from 1988 to the present pertaining to investigations of LASD deputies for suppressing exculpatory evidence from suspects, criminal defendants, and/or prosecutors.

*Request for Production No. 28*

All documents and communications from 1988 to the present pertaining to citizen complaints against LASD deputies for suppressing exculpatory evidence from suspects, criminal defendants, and/or prosecutors.

*Request for Production No. 29*

All documents and communications from 1988 to the present pertaining to lawsuits against LASD deputies for suppressing exculpatory evidence from suspects, criminal defendants, and/or prosecutors.

(Motion, Dkt. No. 60 at 12–15, 31–35).[2]

---

[2] For ease of reference, when referring to the filings, the Court uses page numbers generated by CM/ECF. These numbers are printed in a blue ribbon at the top of each page filed on the docket.

## III. APPLICABLE LAW

Federal Rule of Civil Procedure 26(b)(1), provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The relevance standard is commonly recognized as one that is necessarily broad in scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Doherty v. Comenity Capital Bank & Comenity Bank*, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Sci. Games Corp. v. AGS LLC*, 2017 WL 3013251, at *2 (D. Nev. July 13, 2017) ("Even after the 2015 amendments, courts continue to recognize that discovery relevance remains 'broad' in scope."); *Wagafe v. Trump*, 2018 WL 348470, at *1 (W.D. Wash. Jan. 10, 2018) ("[T]the scope of discovery is broad."). "Proportionality focuses on the marginal utility of the discovery sought." *In re Methyl Tertiary Butyl Ether Prod. Liab. Litig.*, 180 F. Supp. 3d 273, 280 n.43 (S.D. N.Y. 2016) (internal quotation marks and citation omitted).

While the scope of permissible discovery may be broad, because discovery must be both relevant and proportional to the needs of the case, the right to discovery, even

plainly relevant discovery, is not limitless. The 2015 amendments to Rule 26 "were designed to protect against over-discovery and to emphasize judicial management of the discovery process, especially for those cases in which the parties do not themselves effectively manage discovery." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 308 (S.D. Ind. 2016); *see also Davita HealthCare Partners, Inc. v. United States*, 125 Fed. Cl. 394, 398 (2016) (the 2015 amendments to the Federal Rules "contribute to the overall goal of regulating the time and expense of litigation"). However, the larger and more complex the case, the more even relatively voluminous discovery may be considered proportional. The party resisting discovery bears the burden of showing why discovery should not be allowed. *Doutherd v. Montesdeoca*, 2018 WL 3008867, at *2 (E.D. Cal. June 15, 2018) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

## IV. DISCUSSION

### A. *Request for Production Nos. 19–23*

Plaintiff's RFP Nos. 19–23 request the production of "all documents and communications" pertaining to LASD deputy gangs (No. 19), the LASD deputy gang called "The Banditos" (No. 20), the July 1992 Report issued by Special Counsel James G. Kolts (No. 21), the study of LASD deputy gangs and tattoos conducted by former LASD Sheriff Jim McDonnell (No. 22), and the 2021 Loyola Marymount University, Loyola Law School, Center for Juvenile Law and Policy Report titled "50 Years of Deputy Gangs in the Los Angeles County Sheriff's Department" (No. 23). (Motion at 12–15).

Defendants raise a number of objections in their responses to these discovery requests. (*Id.*). These boilerplate objections "do not suffice and there is no ground upon which to reasonably argue otherwise." *Marti v. Baires*, No. 08-CV-00653, 2012 U.S. Dist. LEXIS 77962, 2012 WL 2029720, at *5 (E.D. Cal. June 5, 2012) (emphasis in

original); *see* Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection . . . will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons.") (emphasis added); *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir. 1981) ("objections should be plain enough and specific enough so that the court can understand in what way the [discovery requests] are alleged to be objectionable") (emphasis added). Indeed, boilerplate assertions of any type are improper in federal courts. *See, e.g.*, *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("[G]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections. . . . Similarly, boilerplate relevancy objections, without setting forth any explanation or argument why the requested documents are not relevant, are improper."); *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 379 (C.D. Cal. 2009) ("[U]nexplained and unsupported boilerplate objections are improper."); *Burlington Northern & Santa Fe Ry. Co. v. United States Dist. Court*, 408 F.3d 1142, 1147 (9th Cir. 2005) (boilerplate privilege assertions are ineffective, and a failure to properly assert a privilege may "waive or otherwise abandon the privilege").

"It is well-established that the burden is on the objecting party to show grounds for failing to provide the requested discovery." *Baykeeper v. Kramer Metals, Inc.*, 619 F. Supp. 2d 914, 2009 WL 10671577, at *7 (C.D. Cal. 2009); *see Bible v. Rio Props., Inc.*, 246 F.R.D. 614, 618 (C.D. Cal. 2007); *Sullivan v. Prudential Ins. Co.*, 233 F.R.D. 573, 575 (C.D. Cal. 2005). Defendants cannot simply invoke generalized objections without describing, in specific detail, how each request is overbroad and unduly burdensome by submitting affidavits or other evidence describing the nature of the burden. *See Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980) (The responding party "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.").

Defendant's boilerplate objections as to terms that are vague and ambiguous, that the requests are overbroad, burdensome, and that the documents and communications are equally available to Plaintiff are OVERRULED. *See N. Am. Co. for Life & Health Ins. v. Philpot*, No. 08 CV 270, 2009 U.S. Dist. LEXIS 145077, 2009 WL 10672468, at *4 & n.2 (S.D. Cal. June 1, 2009) (overruling party's discovery objections because it did not quantify its asserted burden to producing the requested information).

Defendants also assert that the responsive documents in their possession, custody, or control are protected by the attorney-client privilege or work product doctrine. Defendants must provide a privilege log as required by Fed. R. of Civ. P. 26(b)(5).

Defendants provide that the documents and communications requested are not proportional to the case and not reasonably calculated to lead to the discovery of admissible evidence, as defined by Federal Rule of Civil Procedure 26(b)(1) because it is not limited in time or scope. The general scope of discovery is defined by Fed. Rule Civ. Proc. 26(b)(1) as follows:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party . . . .

Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Defendants argue that Plaintiff lacks standing to seek relief because, in their view, Plaintiff's *Monell* claim is deficient. As presented, this argument turns on the sufficiency of Plaintiff's allegations, an issue beyond the scope of this dispute.

Defendants also object to the temporal scope of Plaintiff's requests, emphasizing that the underlying criminal proceedings took place between 1993 and 1994. Defendants

rely on several decisions in which district courts limited discovery to five years. As this Court explained at the hearing, the proposed period of 1990 to 1996 was a starting point, and the Court would determine the appropriate period after considering this Motion. (*See* Dkt. No. 60-2 at 21:3-10). The Court does consider the burden imposed on Defendants of searching for responsive documents in making its decision.

Having considered the arguments presented, the Court finds that a period of twelve years is appropriate for the production of documents that Plaintiff requests.[3] The Court justifies this period based on the nature of the wrongful convictions (murder and attempted murder) which Plaintiff suffered and the length of his incarceration—30 years. Thus, production from 1988 to 2000 is proportional to the needs of this case. Defendants cite several decisions where courts have imposed a five-year time period. However, those decisions imposed five-year limits in light of the circumstances presented in each case. *See I.R. v. Cnty. of Los Angeles*, No. 2:23-CV-07073-MRA-BFM, 2024 WL 4402449 (C.D. Cal. Aug. 15, 2024) (concluding that a "five-year look back period is appropriate" in a case that dealt with a 2022 incident); *Martinez v. Cnty. of Los Angeles*, No. 2:22-CV-06589-DSF-MARX, 2023 WL 11809536 (C.D. Cal. Sept. 29, 2023) (concluding that a five year limit was appropriate to match "similar cases" that dealt with battery); *C.B. v. Moreno Valley Unified Sch. Dist.*, No. 5:21-CV-00194-JGB-SP, 2022 WL 19775028, at *4 (C.D. Cal. Aug. 18, 2022) (limiting production to five years time period in a case that dealt with incidents occurring on school grounds).

In the instant case, a time period from 1988 to 2000 may provide materials that bear on whether the alleged misconduct in Plaintiff's case reflected a longstanding LASD practice, when County policymakers learned of that practice, and how they responded. The 1988 start date captures the five years preceding the underlying crime and encompasses the July 1992 Kolts Report. Later materials, including the McDonnell study

[3] This twelve-year time period relates to production for RFP Nos. 19–20 only. For RFP Nos. 21, 22 and 23, the Court GRANTS Plaintiff's motion for the period from 1988 to the present.

and the 2021 Loyola report, may document practices that existed when the crimes were investigated and prosecuted. For RFP Nos. 21, 22 and 23, which request documents related to the Kolts report, the McDonnell study, and the 2021 report, the Court finds that the applicable time period is 1988 to the present. Related communications may also shed light on the County's alleged knowledge and response to those practices. The Court therefore OVERRULES, in part, Defendants' objection to the temporal scope.

Additionally, the Court addresses those materials in *Vargas* and *Torres* and directs Defendants to produce them to the extent that they are responsive to RFPs 19–23 and fall within the period specified above. *Vargas v. County of Los Angeles,* No. CV 19-3279 PSG (ASx), 2020 WL 4032671, at **5–6 (C.D. Cal. May 11, 2020); *Torres v. Los Angeles Sheriff's Department, et al.*, No. 2:22-cv-07450-MWF-MAR, 2024 WL 348845 (C.D. Cal. Jan. 18, 2024). Defendants note that the *Vargas* court sustained the objection as to the materials protected by the attorney-client privilege and granted a protective order. The Court likewise sustains any objection as to the materials protected by the attorney-client privilege and reminds the parties of the protective order currently in place. (*See* Dkt. No. 41).

Thus, Defendants shall comply with this Order by producing responsive, non-privileged documents and communications from 1988 through 2000 for RFP Nos. 19–20, and from 1988 to the present for RFP Nos. 21, 22 and 23, including responsive, nonprivileged materials previously produced in *Vargas* and *Torres*, subject to the protective order. The Court declines to rule on any request for production that the parties have yet to discuss at an informal discovery conference. The Court urges cooperation with this Order and to proceed with production without further delay.

### B. *Request for Production No. 24–29*

Plaintiff's RFP Nos. 24–29 request the production of "all documents and communications from 1988 to the present" pertaining to investigations of LASD deputies for fabricating evidence (No. 24), citizen complaints against LASD deputies for

fabricating evidence (No. 25), lawsuits against LASD deputies for fabricating evidence (No. 26), investigations of LASD deputies for suppressing exculpatory evidence from suspects, criminal defendants, and/or prosecutors (No. 27), citizen complaints against LASD deputies for suppressing exculpatory evidence from suspects, criminal defendants, and/or prosecutors (No. 28), and lawsuits against LASD deputies for suppressing exculpatory evidence from suspects, criminal defendants, and/or prosecutors (No. 29). (Motion, Dkt. No. 60 at 31–35).

Defendants raise similar objections to these requests for production as discussed above. For the reasons discussed above, the Court OVERRULES Defendant's objections.

Defendants also assert that the responsive documents in their possession, custody, or control are protected from disclosure by law and/or personal or family contact information. In addition, Defendants assert that the responsive documents in their possession, custody, or control are protected by the attorney-client privilege or work product doctrine. Defendants must provide a privilege log as required by Fed. R. of Civ. P. 26(b)(5).

Furthermore, as addressed above, the Court finds that the period from 1988 through 2000 also applies to RFP Nos. 24–29. The Court therefore orders Defendants to produce all nonprivileged documents and communications responsive to those requests for that period.[4]

---

[4] Plaintiff's counsel provided Defendants with a list of search terms pertaining to the *Monell* claim, which the Court orders Defendants counsel to utilize when searching for relevant, responsive, and non-privileged documentation, communication, and information. (*See* Motion at 36–37).

Plaintiff also asks the Court to compel Defendants to produce all *Brady* lists of LASD deputies. (Motion at 37). Such lists identify "law enforcement officers whose personnel files contain matters pertaining to—among other things—untruthfulness." (*Id.* (citing *Williams v. Los Angeles Sheriff's Department*, No. CV 17-05640-AB (Ex), 2020 WL 5948286, *1 (C.D. Cal. June 29, 2020)). Although these lists may contain information relevant to Plaintiff's claims, RFP Nos. 24–29 seek records of investigations, citizen complaints, and lawsuits concerning the alleged fabrication or suppression of evidence. Plaintiff identifies no ***disputed*** RFP seeking production of the lists themselves.[5] (emphasis added). A request made in the Joint Stipulation does not, standing alone, provide a basis to compel production under Rule 37. *See MAO-MSO Recovery, LLC v. Mercury Gen.*, No. 17CV02525ABAFMX, 2019 WL 1423772, at *3 (C.D. Cal. Feb. 19, 2019) (A motion to compel under Rule 37, however, "may not be used to enforce an 'informal' request for documents or information."). Therefore, the Court declines to consider production of all LASD *Brady* lists on the present motion.

Accordingly, Defendants shall comply with this Order by producing responsive, non-privilege documents and communications from 1988 through the present for RFP Nos. 24–29. The Court declines to rule on any request for production that the parties have yet to discuss at an informal discovery conference. The Court urges cooperation with this Order and to proceed with production without further delay.

---

[5] In Plaintiff's Supplemental Memorandum in Support of Motion to Compel and for Attorney's Fees, Plaintiff explains that "even if the *Brady* List did not fall under [RFPs] 24–29, it is certainly covered by request number 18(b), which seeks documents and communications on tracking LASD deputy misconduct." (Dkt. No. 61 at 6). Although Plaintiff requested this *Brady* list, Plaintiff's Motion to Compel does not identify this specific RFP. (*See* Motion) (identifying RFPs Nos. 19–23). The Court recognizes Plaintiff explained at the August 14, 2026 informal discovery conference that "[t]he reason [Plaintiff] want[ed] Vargas [was that] there was an issue about a *Brady* list. There was a *Brady* list . . . . We want that list." (Dkt. No. 53 at 24:8–10, 13). Although Plaintiff explained this at the hearing, Plaintiff never formally requested the *Brady* list in his discovery requests to Defendants.

### C. Plaintiff's Request for Attorney's Fees

Plaintiff requests the Court to award sanctions pursuant to Rule 37 for their reasonable expenses, including attorneys' fees for all the time spent over the last seven months attempting to obtain Defendant's *Monell* discovery responses. (Motion at 40).

Under Federal Rule of Civil Procedure 37(a)(5)(A), if a discovery motion is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," unless "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). "[T]he time expended by plaintiff's counsel in connection with his meet and confer efforts is not compensable. Rather only the time expended by plaintiff's counsel in actually preparing the moving papers here is compensable under Rule 37(a)(5)(A)." *Berryhill v. Johnson*, No. SACV111468AGRNBX, 2012 WL 13020328, at *2 (C.D. Cal. July 19, 2012). Rule 37 does not

> **contemplate compensation for participating in informal discovery conferences**. This discovery procedures of the undersigned require all parties to participate in a pre-motion telephonic discovery conference with the Court before filing any motion to compel . . . The purpose of this requirement is to avoid unnecessary and expensive motion practice whenever possible. Because these pre-motion Court conferences are required of both parties, whether or not any motion is ever filed, the attorney time spent preparing for and participating in the Court's pre-motion procedure is not time attributable to "bringing the motion," as no motion may even ensue from the conference.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. CV 25-7992 HDV (PVCx) Date: November 23, 2026

Title Humberto Duran v. Los Angeles County Sheriff's Department, et al.

*Lee v. Cnty. of Los Angeles*, No. 2:23-CV-06875-GW-MAA, 2025 WL 4233932, at *7 (C.D. Cal. Dec. 30, 2025) (emphasis added).

At the end of the discovery period, the parties should file with the Court a briefing schedule related to Plaintiff's Motion for Attorney's fees, and the Court will enter.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion. Within fourteen days of this Order, Defendants are ORDERED to produce all responsive, non-privileged information, documentation, and communications, as specified above, subject to the time period and limitations set forth in this Order. Defendants shall also provide a comprehensive privilege log for any documents withheld.

IT IS SO ORDERED.

| | |
|---|---|
| | 0:00 |
| **Initials of Preparer** | mr |